

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 1, 2024

**BY ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States* v. *Maximiano Camacho Perez*, 23 Cr. 126 (LAK)

Dear Judge Kaplan:

    The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for March 7, 2023. The defendant, Maximiano Camacho Perez, faces a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range of 168 to 210 months' imprisonment. For the reasons set forth below, the Government submits that a below-Guidelines sentence of at least 48 months would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

    **A.  Offense Conduct**

    On February 7, 2023, the defendant and his co-defendant, Ivan Alvarado Maldonado, were arrested while transporting over 16 kilograms of crystal methamphetamine from Wisconsin to the Bronx. Maldonado was driving a pick-up truck that was following closely behind a U-Haul truck that the defendant was driving. (Presentence Investigation Report, dated February 22, 2024 ("PSR") ¶ 10). Agents, who were performing surveillance in the area based on information from a confidential source, conducted a traffic stop in the Bronx of the pickup truck that Maldonado was driving.[1] Maldonado, who was alone in the vehicle, told agents that he and his friend were driving together from Wisconsin, and that his friend was driving a "box truck" that had furniture and a motorcycle inside. (PSR ¶ 10). Although a narcotics-detection dog alerted on the pickup truck that Maldonado was driving, agents searched the vehicle and did not find any narcotics. (PSR ¶ 11).

    Agents subsequently located the U-Haul that the defendant was driving and, after observing it commit a series of traffic infractions, conducted a traffic stop. (PSR ¶ 12). The defendant was driving, and he was accompanied by two women in the front "cab" part of the truck, where agents found personal-use quantities of methamphetamine and a smoking pipe. (PSR ¶ 12). Perez gave

---

[1] Subsequent investigation determined that the pickup truck was registered to the defendant.

consent to search the back part of the truck, but noted that he did not have the key to open the truck's back gate. (PSR ¶ 12). Agents cut open the gate and found 16 kilograms of methamphetamine,[2] along with a motorcycle and other items, and arrested the defendant. After recovering the drugs, agents located Maldonado's pickup truck, which was nearby, and stopped the car and arrested Maldonado. Maldonado had the key to the U-Haul's gate on his person. (PSR ¶ 14). Both the defendant and Maldonado gave post-arrest, *Mirandized* statements in which they explained, in substance, that they were transporting the drugs from Wisconsin to the Bronx and that they had helped load the drugs into the U-Haul. (PSR ¶¶ 14–15). Based on those statements and a review of other evidence, the two women in the vehicle with the defendant were released.

Several days later, agents executed a search warrant at the defendant's trailer home in Manitowoc, Wisconsin (located about 45 minutes southeast of Green Bay). Inside the trailer, agents found additional quantities of liquid methamphetamine mixed with paint and stored in gallon-sized buckets. It appears that the defendant's trailer had been used to separate the methamphetamine from the paint and "cook" the liquid into crystal form.

### B. Procedural History and the Applicable Guidelines Range

On March 9, 2023, a grand jury in this District returned an indictment charging the defendant and Maldonado both with possessing with intent to distribute 500 grams and more of methamphetamine, and conspiring to do the same, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (PSR ¶¶ 1–3). On December 5, 2023, the defendant pleaded guilty to the lesser-included offense of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).

The defendant pleaded guilty pursuant to a written plea agreement (the "Plea Agreement") that contained a stipulated Guidelines calculation. The Plea Agreement's Guidelines calculation matches that of the PSR: a base offense of 38, based on the weight of methamphetamine involved in the conspiracy, less three points for acceptance of responsibility, resulting in a total offense level of 35. (PSR ¶¶ 6, 23–32). The defendant has one criminal history point, based on his 2014 theft conviction, which results in a Guidelines range of 168 to 210 months. The Probation Office recommends a sentence of 120 months.

### C. Discussion

#### 1. Applicable Law

As the Court is well aware, the Guidelines continue to provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, the Court must consider the seven factors outlined in Title 18, United

---

[2] Although agents initially determined that the drugs weighed about 18 kilograms with packaging, subsequent laboratory testing concluded that the defendants were transporting 16 kilograms of methamphetamine.

States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6. To the extent the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 46).

### 2.   A Below-Guideline Sentence of at Least 48 Months Is Appropriate

<u>Seriousness of the Offense</u>:  The defendant's crime was a serious one. Methamphetamine is a highly addictive drug that ruins lives, as the defendant's own addiction demonstrates. The defendant and Maldonado were transporting 16 kilograms—over 35 pounds—of methamphetamine to New York City. Laboratory testing found that the methamphetamine was at or near 100% purity, placing the defendant in the top level of the Guidelines' drug quantity table.

The trip from Wisconsin to New York City was not the defendant's first time distributing methamphetamine. About one week before his arrest on the instant charges, law enforcement agents in Wisconsin obtained a GPS warrant and installed a tracking device on the defendant's pickup truck, after receiving information that the defendant sold methamphetamine locally. Messages on the defendant's phone (which agents seized incident to his arrest in the Bronx) confirmed that, in the weeks leading up to his arrest, he appeared to be involved in selling methamphetamine (albeit in much lesser quantities than the amount he was arrested with—several hundred dollars per transaction).

Not only did the defendant sell methamphetamine, his residence was used to store and "cook" methamphetamine. When Wisconsin authorities executed a search warrant at the defendant's trailer one week after his arrest in the Bronx, they found additional quantities of methamphetamine, in liquid form, mixed with paint in gallon-sized buckets. Although the defense argues that the defendant was renting his trailer to others, agents observed his pickup truck parked in front of the house about two weeks before the arrest, mail with his name was found in the trailer, and witnesses observed the defendant stay overnight at the trailer at least several times in the month before his arrest. A substantial sentence—one that is greater than the 24 months the defense seeks—is warranted.

<u>Relative Culpability</u>:  At the same time, the Government believes that the defendant's 168-to-210-month Guideline range, and Probation's 120-month recommendation, would amount to a sentence that is more severe than is necessary to carry out the purposes of sentencing.

Co-defendant Maldonado received a time-served sentence (amounting to approximately nine months). There are a number of facts that make the defendant more culpable than Maldonado: (i) there was no evidence that Maldonado, who was trained as a dentist in Mexico, was previously involved in drug distribution, whereas ample evidence exists that the defendant sold methamphetamine leading up to his arrest; (ii) Maldonado's trailer was used to store and "cook" methamphetamine, whereas Maldonado asserted—and his phone supported—that he flew to Wisconsin from Nevada about one week before he and the defendant drove to New York City; and (iii) Maldonado's Guidelines range (57 to 71 months) was less than half of the range the defendant faces, based on Maldonado's "zero-point offender" reduction, as well as the parties' stipulation in

Hon. Lewis A. Kaplan                                                                    Page 4
March 1, 2024

Maldonado's plea agreement that he qualified for a two-point safety valve reduction and minor role reduction.

The Government does not believe, however, that these aggravating facts should result in Maldonado receiving a sentence that is over 13 times longer than the sentence Maldonado received (which would be the case if the Court adopted Probation's recommendation). A review of the defendant's and Maldonado's phones makes clear that at least one other person was directing them. The fact that the defendant was driving the U-Haul with the drugs, while Maldonado followed behind him with the key to the U-Haul's back gate, suggests that they had comparable roles in the transportation, not that the defendant was directing Maldonado what to do.

Indeed, it was Maldonado who communicated the expected timing of his and the defendant's arrival in New York City to the confidential source, not the defendant who communicated with the confidential source. Messages in the defendant's phone (as supported by information in the PSR and evidence recovered from the front "cab" of the U-Haul) indicate why: the defendant was a heavy methamphetamine user who was constantly desperate for money. It seems highly unlikely that the defendant had the capacity or means to obtain over 35 pounds of methamphetamine (plus the additional quantities remaining in his residence after his arrest) and then arrange to sell to a buyer in New York City. Notwithstanding his local drug dealing leading up to the New York City trip, the defendant was, in many ways, a courier.

These mitigating circumstances should not obscure the fundamental aspects of the defendant's conduct: he transported almost 35 pounds of crystal methamphetamine across the country—methamphetamine that was stored and "cooked" at his residence—and, before the trip, he repeatedly sold methamphetamine in Wisconsin. A substantial sentence is necessary, and certainly one that is greater than the sentence imposed on Maldonado. In the Government's view, however, the purposes of sentencing can be achieved by a below-Guidelines sentence that is significantly less than the 120-month sentence that Probation recommends. Accordingly, the Government submits that the defendant should receive a sentence of at least 48 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____

Patrick R. Moroney
Assistant United States Attorney
(212) 637-2330

cc:    Nicole Friedlander, Esq. (via ECF)