O5MCperC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                           23 Cr. 126 (LAK)

MAXIMIANO CAMACHO PEREZ,

              Defendant.

------------------------------x
                                       New York, N.Y.
                                       May 22, 2024
                                       11:00 a.m.

Before:

              HON. LEWIS A. KAPLAN,

                                       District Judge

                        APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  PATRICK MORONEY
     Assistant United States Attorney

SULLIVAN & CROMWELL LLP
     Attorneys for Defendant
BY:  NICOLE FRIEDLANDER
     GAGE G. HODGEN
     CHAS KERIN

ALSO PRESENT:

     CRISTINA WEISZ, Spanish Interpreter
```

O5MCperC

THE COURT:  Good morning, folks.  I want to thank counsel for the primmer, very good primmer on immigration law, which is very helpful to me.

I still have a little bit of concern and a couple of questions, maybe one question.  If, for the sake of argument, I would dispose to agree with the defense's request on a sentence, is there some case for not imposing it today, but waiting about six months and then imposing the sentence?  The standpoint being if we waited 6 months, given that he's been incarcerated for 15, it would be appropriate to give a sentence of time served, which would be equivalent to a 24-month sentence.  If we did it that way, would that give any benefit on the immigration side?

MS. FRIEDLANDER:  Your Honor, I believe it would.  May I just speak for a moment with my client?

THE COURT:  Sure.

MS. FRIEDLANDER:  Thank you.

(Counsel and defendant conferred)

Yes, your Honor, we do believe that could make a significant difference with respect to the immigration consequences in this case.  We think it's a really good solution.

THE COURT:  Thank you.

Mr. Moroney, do you have any problem with that?

MR. MORONEY:  Judge, we stand by our initial request

1   for 48.  But, putting that aside, from the immigration
2   standpoint, I agree with what defense counsel laid out in their
3   letter about the effect of a time-served sentence.  I'll put it
4   that way.
5           THE COURT:  All right.  Well, then, I won't actually
6   impose sentence today, and we'll fix a date before we adjourn.
7   The consequence will be that the defendant will remain in
8   presentence detention until the actual sentencing date.  But
9   unless facts that are not within my current knowledge come to
10  my attention that are material to sentence, it would be my
11  present intention to sentence the defendant at that time to
12  time served.  And I think it's useful because life is always
13  uncertain to say why I've come to that conclusion and to make a
14  record of it.
15          First of all, my understanding, and I wish to be
16  corrected if I'm mistaken, is that the defendant's involvement
17  in the offense for which he is to be sentenced was not the
18  distribution of controlled substances for profit as a business,
19  but was rather a way of obtaining methamphetamine for his own
20  personal use in what amounted to a barter transaction.
21          MR. MORONEY:  Your Honor, can I just jump in on that?
22          THE COURT:  Yes, sir.
23          MR. MORONEY:  I understand your Honor's position of
24  views, I don't mean to push back on that, just a factual point.
25          THE COURT:  I asked to be corrected if I'm mistaken.

MR. MORONEY:  Mr. Comacho was delivering a U-Haul with kilograms of methamphetamine for which he was going to be paid cash.  I think the transactions --

THE COURT:  So it wasn't a barter, it was a cash transaction to finance his habit.  Is there any disputes about that?

MR. MORONEY:  I don't know what he was going to use the money for, but he was certainly using amphetamine.  That's true, your Honor.

THE COURT:  I stand slightly corrected.

Secondly, I think the guideline range in his case is somewhat exaggerated, as the defense argues, by a single misdemeanor conviction for conduct that, as I understand it, occurred more than 10 years earlier, more than 10 years ago. The conviction, the misdemeanor conviction just missed being excluded from the calculation because of the 10-year period in the guidelines, as indicated at page 5 of the defendant's memorandum.

Third, I am told I have no reason to question that the defendant kicked his meth addiction at his own instance while in custody, and he did it cold turkey, a very painful and difficult process, because he finally got control of it, something for which he's entitled to a great deal of credit.

Next, he has served 15 months so far, and assuming we're together again in six months, will have served that

1   additional period at the MDC, which is horrible.  Various of me
2   colleagues have defined it in rather colorful language that I
3   don't have to repeat or adopt, but the conditions of
4   confinement are awful and not a credit to the United States of
5   America.
6            Next, I accept that, given the time-served sentence to
7   another defendant in this case, there is a need to avoid
8   disparities.  I think the government agrees with that because
9   they're recommending a below-guidelines sentence, as well.  I
10  understand we differ about the extent to which I should go to
11  avoid disparities, but I respect that and it's my call.
12           But the most important facts are these:  Mr. Comacho
13  came to the United States at the age of 14 speaking no English.
14  He worked.  He managed to get an education.  He has been a hard
15  worker in legitimate activities all his life.  He is married
16  and has three children.  They are all U.S. citizens.  There is
17  a material risk that he will be removed from the United States
18  as a result of this conviction.  That, in my view, would be a
19  very undesirable result.  I am very well aware of the
20  seriousness of this offense, but given the personal
21  circumstances of Mr. Comacho and the person that he is, apart
22  from distributing some meth to feed his own addiction, he has
23  been a good man in this country, a good father, a good husband,
24  a hard worker, and to rip that family apart would be
25  excessively punitive, very excessively punitive and inhumane.

O5MCperC

1  I don't want to impose a sentence that would make that any more
2  likely than it may be.
3        And I want to be very clear on the record that even if
4  he proves to be removed from the United States, that I believe
5  he should be readmitted on whatever basis under the Immigration
6  and Nationality Act he can be readmitted.  I understand that
7  the Attorney General has discretionary authority in the matter
8  and I think it ought to be exercised.
9        That's my view of this case.  As I say, unless
10 something new comes to my attention between now and the date
11 we're about to select, those are the reasons why I'm going to
12 impose, at that time, a sentence of time served.
13       Now, this is May 22nd.  Do we have a date in the late
14 part of November we can do this?
15       THE DEPUTY CLERK:  November 26th.
16       THE COURT:  We'll put it down for resentencing, if
17 it's okay with counsel, November 26th at 11 o'clock.
18       Does that work?
19       MR. MORONEY:  It does.  Thank you.
20       MS. FRIEDLANDER:  Yes, your Honor.  Thank you.
21       THE COURT:  Okay.  I will see you all again, I trust.
22                              * * *
23
24
25